# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA



RECEIVED

FEB 18 2026

CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

THERESA MARGARET MacDONALD,

also known as Theresa Pushruk MacDonald,

Inupiaq Name: Mituutuq,

in her capacity as an enrolled member of the

Native Village of King Island and enrolled shareholder

of King Island Corporation, Bering Straits

Native Corporation, and Sitnasuak Native Corporation,

**Plaintiff,**

v.                                     Case No. 3:26-cv-00080-ACP

KELLY LOEFFLER, **in her official capacity as**

Administrator of the U.S. Small Business

Administration;

**U.S. SMALL BUSINESS ADMINISTRATION,**

an agency of the United States;

**PETE HEGSETH, in his official capacity as**

Secretary of the Department of War,

**Defendants.**

---

## COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF,

## AND WRIT OF MANDAMUS

(Filed Pro Se Pursuant to 28 U.S.C. 1331, 28 U.S.C. 1361, 5 U.S.C. 701-706)

---

## PRELIMINARY STATEMENT

1. Plaintiff Theresa Margaret MacDonald brings this action to challenge the unlawful actions of the U.S. Small Business Administration ("SBA") and its Administrator in dismantling the 8(a) Business Development Program as it applies to Alaska Native Corporation ("ANC")-owned businesses, in violation of the Alaska Native Claims Settlement Act ("ANCSA"), P.L. 92-203, 43 U.S.C. 1601 et seq.; the Small Business Act, 15 U.S.C. 631 et seq.; the Indian Self-Determination and Education Assistance Act ("ISDA"), 25 U.S.C. 5301 et seq.; the Administrative Procedure Act ("APA"), 5 U.S.C. 701-706; and the United States Constitution, including the Indian Commerce Clause (Art. I, Sec. 8, cl. 3) and the Due Process Clause of the Fifth Amendment. Plaintiff further seeks a Writ of Mandamus pursuant to 28 U.S.C. 1361 to compel the SBA Administrator to faithfully execute her statutory duties under the Small Business Act.

2. The 8(a) program for ANC-owned firms is not a racial preference or "DEI" initiative. It is a political classification rooted in the government-to-government trust responsibility between the United States and Alaska Native peoples, implemented through a comprehensive Congressional framework that includes ANCSA (1971), the Indian Self-Determination Act (1975), the Business Opportunity Development Reform Act (1988),

and over three decades of annual Congressional appropriations riders specifically authorizing ANC contracting.[1]

3. The decision in *Ultima Services Corp. v. U.S. Dep't of Agriculture*, Case No. 2:20-cv-00041-DCLC-CRW (E.D. Tenn. 2023), upon which Defendants rely, struck down only the *rebuttable presumption of social disadvantage based on individual racial classification.* The *Ultima* court did <u>not</u> hold the entire 8(a) program unconstitutional, did <u>not</u> address ANC participation, and did <u>not</u> disturb the political classification framework established by *Morton v. Mancari*, 417 U.S. 535 (1974), and reaffirmed in *Haaland v. Brackeen*, 599 U.S. 255 (2023).[2]

4. Plaintiff seeks declaratory and injunctive relief, and a Writ of Mandamus, to prevent Defendants from (a) characterizing ANC participation in the 8(a) program as a "DEI" initiative; (b) suspending or terminating ANC-owned 8(a) firms without adequate due process; (c) effectively nullifying Congressional mandates established by ANCSA, the Small Business Act, and ISDA; and (d) refusing to perform mandatory statutory duties under the Small Business Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 (federal question), as this action arises under the Constitution and laws of the United States, including the Administrative Procedure Act, 5 U.S.C. 701-706; the Alaska Native Claims Settlement

---

[1] The Congressional framework for ANC contracting includes: ANCSA (P.L. 92-203, 1971); the Indian Self-Determination and Education Assistance Act (P.L. 93-638, 1975); the Consolidated Omnibus Budget Reconciliation Act of 1985 (P.L. 99-272, 1986, authorizing ANC 8(a) participation); the Business Opportunity Development Reform Act (P.L. 100-656, 1988, exempting tribal entities from 8(a) competitive thresholds); and DOD appropriations riders from P.L. 101-165 (1989) through the present, authorizing direct conversions to ANC-owned firms. *See* Kate M. Manuel, Jane M. Smith & John R. Luckey, Congressional Research Service, R40855, *Contracting Programs for Alaska Native Corporations* (2011).

[2] *Ultima Servs. Corp. v. U.S. Dep't of Agric.*, No. 2:20-cv-00041-DCLC-CRW (E.D. Tenn. July 19, 2023). The court's holding was limited to the rebuttable presumption under 13 C.F.R. 124.103(b). The court's own framing: "This case concerns whether . . . Defendants . . . may use a 'rebuttable presumption' of social disadvantage for certain minority groups." Mem. Op. at 1. ANC-owned firms do not rely on this presumption; they are deemed economically disadvantaged by statute, 15 U.S.C. 637(a)(4).

Act, 43 U.S.C. 1601 et seq.; the Small Business Act, 15 U.S.C. 631 et seq.; and the Indian Self-Determination and Education Assistance Act, 25 U.S.C. 5301 et seq.

6. This Court has jurisdiction to issue a Writ of Mandamus pursuant to 28 U.S.C. 1361, which grants district courts original jurisdiction over actions to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

7. Venue is proper in the District of Alaska pursuant to 28 U.S.C. 1391(e) because (a) Plaintiff resides in Anchorage, Alaska; (b) the Alaska Native Corporations directly affected by Defendants' actions are organized under the laws of Alaska; and (c) a substantial part of the events giving rise to this claim occurred and continue to occur in Alaska.

## STATUTORY AND CONSTITUTIONAL FRAMEWORK

### *A. Constitutional Provisions*

8. The Indian Commerce Clause of the United States Constitution, Article I, Section 8, Clause 3, grants Congress the power "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." This clause establishes the constitutional foundation for the government-to-government relationship between the United States and tribal entities, including Alaska Native peoples and the corporations created by ANCSA to implement their aboriginal land claims settlement.[3]

9. The Due Process Clause of the Fifth Amendment guarantees that "[n]o person shall be deprived of life, liberty, or property, without due process of law." Defendants' mass suspensions of 8(a) firms without adequate notice, opportunity to respond, or individualized determination violate this guarantee.

---

[3]The Indian Commerce Clause is the constitutional foundation for all federal Indian legislation. *See United States v. Lara*, 541 U.S. 193, 200 (2004) ("The Constitution grants Congress broad general powers to legislate in respect to Indian tribes, powers that we have consistently described as 'plenary and exclusive.'"). ANCSA, ISDA, and the Small Business Act's tribal provisions all derive authority from this clause.

10. The First Amendment protects the right of the people "to petition the Government for a redress of grievances." The Ninth Amendment provides that the enumeration of certain rights shall not deny others retained by the people. Together, these amendments protect the right of Alaska Native peoples to seek economic self-determination through the Congressional frameworks established for their benefit.[4]

*B. The Alaska Native Claims Settlement Act (ANCSA)*

11. In 1971, Congress enacted the Alaska Native Claims Settlement Act, P.L. 92-203, 43 U.S.C. 1601 et seq., to settle the aboriginal land claims of Alaska Natives. Congress found that "there is an immediate need for a fair and just settlement of all claims by Natives and Native groups of Alaska, based on aboriginal land claims." 43 U.S.C. 1601(a). ANCSA extinguished claims to over 360 million acres and provided Alaska Natives with approximately 45 million acres of land and $962.5 million in compensation.[5]

12. ANCSA created twelve regional corporations (43 U.S.C. 1606) and over 200 village corporations (43 U.S.C. 1607) to receive the settlement lands and funds. A thirteenth regional corporation was later created for Alaska Natives not residing in Alaska. 43 U.S.C. 1606(c). These corporations serve the unique purpose of implementing the Congressional settlement and providing economic, social, and cultural benefits to Alaska Native shareholders and their descendants.[6]

13. ANCSA established that ANCs shall be considered "minority business enterprises" for purposes of federal contracting and business development programs. 43 U.S.C. 1626(e).

---

[4] Alaska Natives' right to economic self-determination is also protected by the United Nations Declaration on the Rights of Indigenous Peoples (UNDRIP), endorsed by the United States in 2010, which recognizes indigenous peoples' rights to self-determination, economic development, and maintenance of their own institutions.

[5] As the Supreme Court has observed, Alaska is unique in "the sheer prior Indian and federal history from which it has taken shape, and the complexity of its issues." *Sturgeon v. Frost*, 577 U.S. 424, 428 (2016). ANCSA replaced the reservation system with a corporate model unique to Alaska, creating entities that serve governmental functions without being governments.

[6] Under ANCSA, Alaska Natives received shares in regional and village corporations as part of the Congressional settlement. 43 U.S.C. 1606(g), 1607(a). The 1991 amendments (P.L. 100-241) made restrictions on alienation permanent unless a corporation votes to lift them. The corporate structure was Congress's chosen vehicle for implementing the settlement, not a racial classification scheme.

This designation is a political classification arising from the Congressional settlement, not a racial classification based on individual identity.

*C. The Indian Self-Determination and Education Assistance Act (ISDA)*

14. Congress enacted ISDA, 25 U.S.C. 5301 et seq., declaring that "the prolonged Federal domination of Indian service programs has served to retard rather than enhance the progress of Indian people" and affirming "the obligation of the United States to respond to the strong expression of the Indian people for self-determination." 25 U.S.C. 5302. ISDA defines "Indian tribe" to include "any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act." 25 U.S.C. 5304(e).[7]

15. The Supreme Court confirmed that ANCs qualify as "Indian tribes" under ISDA in *Yellen v. Confederated Tribes of the Chehalis Reservation*, 594 U.S. 337 (2021). The Alaska Federation of Natives argued in its amicus brief that Congress has consistently used the ISDA definition to include ANCs in federal programs, and uses "sharply different language" only when it intends to exclude them.[8]

*D. The Small Business Act and 8(a) Program*

16. Congress enacted the Small Business Act in 1953, 15 U.S.C. 631 et seq., to encourage and develop the capacity of small businesses. Section 8(a) grants the SBA authority to acquire procurement contracts from other government agencies and to award them to "socially and economically disadvantaged small business concerns." 15 U.S.C. 637(a)(1)(B).

---

[7] ISDA, 25 U.S.C. 5304(e): "'Indian tribe' means any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act." *See Cook Inlet Native Ass'n v. Bowen*, 810 F.2d 1471, 1476 (9th Cir. 1987).

[8] Amicus Curiae Brief of Alaska Federation of Natives, Nos. 20-543, 20-544, *Mnuchin v. Confederated Tribes of the Chehalis Reservation* (later styled *Yellen*) (filed by Birch, Horton, Bittner & Cherot, P.C., Washington, D.C.). AFN argued: "Congress Either Uses the ISDA Definition to Include ANCs or Sharply Different Language to Exclude Them." The Supreme Court agreed, holding ANCs qualify as "Indian tribes."

17. In 1986, Congress specifically authorized ANC participation in the 8(a) program through P.L. 99-272, codified at 15 U.S.C. 637(a)(13) and 637(a)(4). The Small Business Act defines "Indian tribe" to include ANCs for purposes of 8(a) participation. ANCs are deemed "economically disadvantaged" by statute. 15 U.S.C. 637(a)(4).[9]

18. Congress granted ANCs special provisions under the 8(a) program, including: (a) the ability to own multiple 8(a) subsidiaries; (b) eligibility for sole-source contracts above the competitive threshold; and (c) exemption from individual size standards. These provisions recognize the unique role of ANCs as community-benefit corporations serving entire Alaska Native communities.[10]

*E. Congressional Appropriations Riders (1989-Present)*

19. Since 1989, Congress has attached riders to every Department of Defense appropriations act permitting DOD to avoid the competitive sourcing process under OMB Circular A-76 when contracting to firms owned by ANCs, Indian tribes, or Native Hawaiian Organizations. This 37-year unbroken chain of annual Congressional authorization demonstrates that ANC contracting preferences are deliberate, repeatedly affirmed Congressional policy.[11]

20. The Business Opportunity Development Reform Act of 1988 (BODRA), P.L. 100-656, Sec. 602(a), specifically exempted entities defined as "Indian tribes" under the Small Business Act from the competitive thresholds in Section 8(a). Congress raised the sole-source

---

[9] 15 U.S.C. 637(a)(4): A business "shall be deemed to be economically disadvantaged" if it is "at least 51 per centum unconditionally owned by" an ANC and "its management and daily business operations are controlled by" Alaska Natives. This statutory deeming provision operates independently of the rebuttable presumption struck down in *Ultima*.

[10] The Native American Contractors Association stated at the Senate Committee on Indian Affairs hearing (February 10-12, 2026): "Native corporations were formed in perpetuity to provide economic, social and cultural benefits to an entire community. How can an individual disadvantaged company or person have equal rights to a social enterprise that's serving an entire community of disadvantaged people?"

[11] CRS Report R40855 documents that Congress has attached riders to DOD appropriations from P.L. 101-165, Sec. 9036 (1989) through P.L. 111-118, Sec. 8016 (2009) and continuing to the present. Each rider permits direct conversion of DOD functions to ANC-owned, tribal, or NHO-owned firms without the A-76 competitive sourcing process. This 37-year chain of annual reauthorization is the strongest possible evidence of sustained Congressional intent.

threshold for tribal entities to $100 million in 2020, further demonstrating Congressional intent to preserve and strengthen ANC and tribal participation.[12]

## PARTIES

21. Plaintiff Theresa Margaret MacDonald (Inupiaq name: Mituutuq) is a citizen of the United States and a resident of Anchorage, Alaska. Plaintiff is an enrolled member of the Native Village of King Island, a federally recognized tribe, and is an enrolled shareholder of King Island Corporation (a village corporation under 43 U.S.C. 1607), Bering Straits Native Corporation (a regional corporation under 43 U.S.C. 1606), and Sitnasuak Native Corporation (a village corporation under 43 U.S.C. 1607), all created pursuant to ANCSA. Plaintiff brings this action on her own behalf as an enrolled shareholder whose economic interests are directly harmed by Defendants' actions. The relief Plaintiff seeks would benefit all ANC shareholders and future generations of Alaska Native peoples, but Plaintiff does not purport to represent any class, corporation, tribe, or any other person or entity in this action.[13]

22. Defendant Kelly Loeffler is the Administrator of the U.S. Small Business Administration and is sued in her official capacity. Administrator Loeffler has a non-discretionary statutory duty under 15 U.S.C. 637(a) to administer the 8(a) program, including processing applications from ANC-owned firms.

23. Defendant U.S. Small Business Administration is an independent agency of the United States Government responsible for administering the 8(a) Business Development Program

---

[12]Congress raised the sole-source threshold for tribal entities from $22 million to $100 million in 2020. Secretary Hegseth's announced review of 8(a) sole-source contracts over $20 million specifically targets tribal and ANC firms, whose statutory threshold is $100 million. Non-tribal firms have a threshold of $5.5 million (manufacturing) or $8.5 million (non-manufacturing). The selective review raises constitutional concerns about selective enforcement.

[13]Plaintiff's standing derives from her status as a shareholder of entities created by Act of Congress whose economic viability depends on continued 8(a) access. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff's injury is concrete and particularized: as a shareholder of three ANCSA corporations, the dismantling of the 8(a) program directly reduces the economic benefits flowing to her through those corporations. While the relief sought would benefit all ANC shareholders and future generations, Plaintiff sues on her own behalf and does not purport to represent any class or entity. Under ANCSA, shares descend to Alaska Native descendants in perpetuity. 43 U.S.C. 1606(h).

pursuant to Sections 7(j)(10) and 8(a) of the Small Business Act, 15 U.S.C. 636(j)(10) and 637(a).

24. Defendant Pete Hegseth is the Secretary of the Department of War and is sued in his official capacity. On January 16, 2026, Secretary Hegseth publicly characterized the 8(a) program as "the oldest DEI program in the federal government," vowed to take a "sledgehammer" to it, and accused participating firms of operating "pass-through schemes."[14]

## FACTUAL BACKGROUND

### A. ANCSA and the Political Classification of Alaska Native Corporations

25. ANCSA was a political act by Congress to settle aboriginal land claims, not a racial classification. Congress extinguished Alaska Native aboriginal title to over 360 million acres of land and in exchange created a corporate structure to hold the settlement lands and funds for the benefit of Alaska Native peoples and their descendants. 43 U.S.C. 1601-1629h.

26. Alaska's 79 ANCs (13 regional and 66 village corporations) collectively own over 1,396 enterprises in federal contracting. Federal contracting through the 8(a) program is the primary mechanism by which ANCs fulfill ANCSA's purpose of economic self-determination. Chugach Alaska Corporation alone distributed $32.6 million in community and shareholder benefits in 2024.[15]

---

[14]Secretary Hegseth's January 16, 2026 video is publicly available. He stated: "We're actually taking a sledgehammer to the oldest DEI program in the federal government." He further accused firms of being "pass-through" entities. This contradicts federal regulations requiring 8(a) prime contractors to perform at least 51% of service contract work in-house (13 C.F.R. 125.6), and contradicts 50 years of Supreme Court precedent. *See* Nick Capozzi, *Opinion: 8(a) contracting isn't a loophole; it's a competition*, Anchorage Daily News, Feb. 6, 2026.

[15]Testimony of Chugach Alaska Corporation, Senate Committee on Indian Affairs, February 10-12, 2026. Senator Murkowski stated: "8(a) is a success story. It's not a fraud. There is a trust responsibility that this country owes to our Native Americans. There is a unique political relationship that exists."

### B. The Supreme Court Has Repeatedly Affirmed the Political Classification

27. In *Morton v. Mancari*, 417 U.S. 535 (1974), the Supreme Court unanimously held that Indian preferences are political, not racial, classifications. "The preference is not directed towards a 'racial' group consisting of 'Indians'; instead, it applies only to members of 'federally recognized' tribes. In this sense, the preference is political, rather than racial in nature." 417 U.S. at 553 n.24.[16]

28. In *Haaland v. Brackeen*, 599 U.S. 255 (2023), the Supreme Court upheld the Indian Child Welfare Act 7-2, reaffirming Congress's broad authority over Indian affairs. Justice Gorsuch stated the "Constitution reserves for the Tribes a place, an enduring place, in the structure of American life."

29. In *Yellen v. Confederated Tribes of the Chehalis Reservation*, 594 U.S. 337 (2021), the Supreme Court held that ANCs are "Indian tribes" under ISDA for purposes of CARES Act funding, confirming the political character of ANC classifications.[17]

### C. The Ultima Decision Does Not Reach ANC Participation

30. In *Ultima Services Corp. v. U.S. Dep't of Agriculture*, No. 2:20-cv-00041-DCLC-CRW (E.D. Tenn. 2023), the court granted summary judgment on the narrow question of whether SBA's "rebuttable presumption" of social disadvantage for certain racial and ethnic minority groups violates the Fifth Amendment.[18]

---

[16]*Morton v. Mancari*, 417 U.S. 535, 553 n.24 (1974). The unanimous Court further stated: "Resolution of the instant issue turns on the unique legal status of Indian tribes under federal law and upon the plenary power of Congress, based on a history of treaties and the assumption of a 'guardian-ward' status, to legislate on behalf of federally recognized Indian tribes." 417 U.S. at 551-52.

[17]*Yellen v. Confederated Tribes of the Chehalis Reservation*, 594 U.S. 337 (2021). The Alaska Federation of Natives argued in its amicus brief that "According ANCs Only Lesser 'Tribal Organization' Status Frustrates the Self-Determination of Alaska Natives." The Court agreed. This holding directly contradicts any attempt to strip ANCs of their "Indian tribe" status for purposes of the 8(a) program.

[18]The *Ultima* court relied on *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023), which struck down race-conscious college admissions. However, SFFA addressed individual racial classifications in education, not political classifications of tribal entities. The *Ultima* court noted defendants "did not identify any specific contracting officer who engaged in intentional racial or national-origin discrimination." Mem. Op. at 6.

31. However, *Ultima* is critically limited. The court addressed only the rebuttable presumption under 13 C.F.R. 124.103(b), applicable to *individual* business owners claiming social disadvantage based on racial identity. The plaintiff was "a white woman." The court did <u>not</u> address ANC participation under 15 U.S.C. 637(a)(4) and 637(a)(13), which rests on Congressional enactment (ANCSA), not individual racial classification.[19]

32. The SBA's own Biden-era "Guide for Demonstrating Social Disadvantage" confirms this distinction. That guide applied to individual applicants who needed to demonstrate personal experiences of discrimination. ANC-owned firms never used this process. ANCs are deemed economically disadvantaged by statute, 15 U.S.C. 637(a)(4), without any individual narrative requirement.[20]

33. A footnote in the *Ultima* proceedings attempted to distinguish ANCs from Indian Tribes by arguing that ANCSA's blood quantum provision makes the classification racial. This argument has been rejected by the Supreme Court in *Yellen* and contradicts the ISDA definition at 25 U.S.C. 5304(e).[21]

*D. Defendants' Unlawful Actions*

34. Beginning in February 2025, Defendants have undertaken a systematic campaign to dismantle the 8(a) program, characterizing it as a "DEI" program and conflating the political classification of ANC and tribal participation with racial preferences.

---

[19]A footnote in subsequent *Ultima* proceedings attempted to distinguish ANCs from Indian Tribes by citing ANCSA's blood quantum provision. This argument was not adopted by the court and contradicts *Yellen*, 594 U.S. 337, and the ISDA definition, 25 U.S.C. 5304(e). If accepted, it would unravel the entire ISDA framework including programs for housing (25 U.S.C. 4103), energy (25 U.S.C. 3501), and healthcare.

[20]SBA's "Guide for Demonstrating Social Disadvantage" (removed from SBA website) required individual applicants to provide narrative descriptions of personal discrimination. This process applied to individually-owned 8(a) firms, not ANC-owned firms, which are deemed economically disadvantaged by statute without individual narratives. The guide's removal is irrelevant to ANC eligibility.

[21]ANCSA defined original enrollees as persons with one-quarter or more Alaska Native blood. 43 U.S.C. 1602(b). Critics argue this makes ANC classification "racial." However, blood quantum was the enrollment criterion for the settlement, not the corporate structure. ANCs are state-chartered corporations created by Act of Congress. Their classification derives from their political origin in ANCSA. *See Morton v. Mancari*, 417 U.S. at 553 n.24 (tribal preference "operates to exclude many individuals who are racially to be classified as 'Indians'").

35. In February 2025, Administrator Loeffler cut the Small Disadvantaged Business contracting goal to its statutory 5% and ended race-based presumptions of social disadvantage.

36. In June 2025, Defendants launched the first-ever audit of the 8(a) program in its nearly 50-year history, initiating investigations into contracts going back 15 years.

37. On December 5, 2025, SBA ordered all 4,300 8(a) contractors to produce three years of financial documents across 13 categories by January 19, 2026.[22]

38. On January 21, 2026, SBA suspended over 1,091 firms for alleged non-compliance with the data call.

39. On January 22, 2026, SBA issued guidance declaring the racial presumption unconstitutional and redefining social disadvantage to consider whether an individual "has been the victim of illegal or radical DEI policies." This was implemented without notice-and-comment rulemaking.[23]

40. On January 16, 2026, Secretary Hegseth stated he was "taking a sledgehammer to the oldest DEI program in the federal government" and accused 8(a) firms of being "pass-through" entities.[24]

41. On February 11, 2026, SBA initiated termination proceedings against 154 additional firms.

42. Defendants admitted only 65 new firms to the 8(a) program in fiscal year 2025, compared to over 2,200 in the prior four-year administration.[25]

---

[22]PilieroMazza warned that the data call covered 13 categories and "failure to fully respond could lead to suspension, debarment, early graduation, stop-work orders on existing contracts or liability under the False Claims Act, which carries potential treble damages." The compressed timeline over the holiday period created due process concerns.

[23]SBA News Release 26-23, January 22, 2026. The Dorsey law firm advised: "Given the likelihood of further actions by the Administration targeting the 8(a) Program, Program participants such as ANCs should develop a comprehensive legislative, political, and legal strategy to preserve the program."

[24]Nick Capozzi, General Manager of Jadin Tech LLC (8(a)), subsidiary of Akhiok-Kaguyak Inc. (Alaska Village Native Corporation), Anchorage Daily News (Feb. 6, 2026): "For service contracts, the prime contractor must perform at least 51% of the work, excluding the cost of materials. This means the prime cannot simply act as a pass-through entity." He further stated: "The federal government must choose: Either apply these standards across the board or not at all."

[25]Attorney Matthew Schoonover: "The Small Business Act grants SBA's Administrator wide discretion to implement the 8(a) Program," but "the 8(a) Program can only be eliminated through an act of Congress." The Administrator's discretion does not extend to de facto elimination. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004).

43. Defendants' actions directly harm the economic self-determination of Alaska Native communities served by King Island Corporation, Bering Straits Native Corporation, Sitnasuak Native Corporation, and all other ANCs.[26]

# CAUSES OF ACTION

# COUNT I

## Violation of the Administrative Procedure Act (5 U.S.C. 706(2))

## Arbitrary, Capricious, and Contrary to Law

44. Plaintiff incorporates all preceding paragraphs.

45. SBA's January 22, 2026, guidance and systematic dismantlement of the 8(a) program are arbitrary, capricious, an abuse of discretion, and contrary to law under 5 U.S.C. 706(2)(A) because they: (a) conflate political classifications with racial preferences, contrary to *Morton v. Mancari* and *Haaland v. Brackeen*; (b) effectively nullify ANCSA, the Small Business Act, and ISDA without Congressional authorization; (c) were implemented without notice-and-comment rulemaking required by 5 U.S.C. 553; (d) fail to consider reliance interests of Alaska Native communities; and (e) violate the trust responsibility of the United States.

# COUNT II

## Violation of the Administrative Procedure Act (5 U.S.C. 706(1))

## Agency Action Unlawfully Withheld or Unreasonably Delayed

---

[26] 79 ANCs collectively own 1,396+ enterprises. Federal contracting is the keystone of Alaska's economy. For King Island Corporation, Bering Straits Native Corporation, and Sitnasuak Native Corporation specifically, the 8(a) program provides the economic self-determination that ANCSA was designed to deliver. Loss of this program threatens the inheritance of future generations whose shares descend in perpetuity under 43 U.S.C. 1606(h).

46. Plaintiff incorporates all preceding paragraphs.

47. SBA's de facto refusal to administer the 8(a) program constitutes agency action "unlawfully withheld or unreasonably delayed" under 5 U.S.C. 706(1). The admission of only 65 firms in FY2025 compared to over 2,200 in the prior period demonstrates deliberate non-performance of a mandatory statutory duty. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004).

## COUNT III

### Violation of the Alaska Native Claims Settlement Act

### (43 U.S.C. 1601 et seq.)

48. Plaintiff incorporates all preceding paragraphs.

49. ANCSA was enacted to promote economic self-determination of Alaska Native peoples through ANCs. Congress authorized ANC 8(a) participation to fulfill ANCSA's purposes. Defendants' actions to characterize ANC participation as "DEI," subject ANCs to unprecedented audits, and effectively shut down the program violate ANCSA's purposes and mandates.

## COUNT IV

### Violation of the Small Business Act (15 U.S.C. 631 et seq.)

50. Plaintiff incorporates all preceding paragraphs.

51. The Small Business Act at 15 U.S.C. 637(a)(4) and 637(a)(13) specifically provides for ANC participation and deems ANCs economically disadvantaged. The SBA Administrator cannot override these statutory provisions through executive guidance or administrative inaction.

## COUNT V

## Violation of the Trust Responsibility of the United States

## and the Indian Commerce Clause (Art. I, Sec. 8, cl. 3)

52. Plaintiff incorporates all preceding paragraphs.

53. The United States has a trust responsibility to Alaska Native peoples. Congress declared in ISDA that federal policy is to promote "maximum Indian participation in the direction of" federal services to Indian communities. 25 U.S.C. 5302. Defendants' actions violate this trust obligation. *See Seminole Nation v. United States*, 316 U.S. 286, 296-97 (1942).

## COUNT VI

## Violation of Due Process (Fifth Amendment)

54. Plaintiff incorporates all preceding paragraphs.

55. Defendants suspended over 1,091 8(a) firms on January 21, 2026, based on alleged non-compliance with a December 5, 2025 data call. Firms that submitted complete responses one day late due to government portal errors received suspension notices. The mass suspension without adequate individualized notice, meaningful opportunity to respond, or consideration of extenuating circumstances violates the Due Process Clause of the Fifth Amendment.

## COUNT VII

## Writ of Mandamus (28 U.S.C. 1361)

## To Compel Performance of Non-Discretionary Statutory Duty

56. Plaintiff incorporates all preceding paragraphs.

57. The SBA Administrator has a clear non-discretionary duty under 15 U.S.C. 637(a) to administer the 8(a) program as Congress directed. While the Administrator has discretion in *how* to administer the program, she does not have discretion to *refuse* to administer it. The collapse from 2,200+ admissions to 65 demonstrates refusal to perform a mandatory duty.

58. Plaintiff has a clear right to relief as a shareholder of three ANCs whose economic viability depends on the program. Plaintiff has no adequate alternative remedy. Only judicial intervention can compel performance.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Issue a declaratory judgment that ANC participation in the 8(a) program is a political classification based on the government-to-government trust responsibility under ANCSA, ISDA, and the Indian Commerce Clause, not a racial preference or "DEI" program;

B. Issue a declaratory judgment that Defendants' characterization of the 8(a) program as "DEI" is contrary to the Small Business Act, ANCSA, ISDA, and binding Supreme Court precedent including *Morton v. Mancari*, *Haaland v. Brackeen*, and *Yellen v. Confederated Tribes*;

C. Issue a declaratory judgment that *Ultima Services Corp.* does not extend to ANC participation;

D. Issue a preliminary and permanent injunction prohibiting Defendants from suspending, terminating, or adversely affecting ANC-owned 8(a) firms based on the characterization of ANC participation as racial or "DEI";

E. Issue a Writ of Mandamus compelling Defendant Loeffler to administer the 8(a) program as directed by Congress, including timely processing of applications from ANC-owned firms under 15 U.S.C. 637(a);

F. Issue an order requiring compliance with APA notice-and-comment requirements before implementing further changes affecting ANC 8(a) participation;

G. Award Plaintiff costs of suit and such further relief as this Court deems just and equitable.

Respectfully submitted,

**THERESA MARGARET MacDONALD, Pro Se**

Mituutuq

Enrolled Member, Native Village of King Island

2535 West 69th Court

Anchorage, Alaska 99502

(907) 360-4097

teri.macdonald@protonmail.com

Dated: _____, 2026

**VERIFICATION**

I, Theresa Margaret MacDonald, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Theresa Margaret MacDonald

Dated: _____, 2026